[No. 20352.  Department Two.  July 23, 1927.]

Mina MacGerry, *Respondent,* v. H. L. Rodgers *et al.,*
*Appellants.*[1]

[1] Pleading (126)—Supplemental Complaint—Departure. It is
not a departure in an action on contract for amended complaints,
setting forth the same contract and breach, to allege a different
kind and amount of damages in the result.

[2] Contracts (83)—Subject-Matter—Support. In an action by
a widowed mother for breach of a contract to support her and
her child for thirty years, the jury should be instructed to
limit the recovery for support of the child to the period of the
child's natural dependency.

[3] Evidence (52, 104)—Res Gestae—Hearsay—Statements by
Persons Other Than Parties or Witnesses. In an action by
a widowed mother for breach of a contract to support her and
her child for thirty years, it is hearsay and inadmissible to
allow a witness, to whom the plaintiff appealed for aid and
sympathy at the time of the breach, to detail all that plaintiff
had said as to what occurred between plaintiff and defendants,
as part of the *res gestae* of the breaking of relations.

[4] Witnesses (60)—Examination—Leading Questions — Remedy.
It seems that questions are not objectionable as leading if no
more suggestive than necessary to direct the attention of the
witness to omitted details; but in any event the answers should
not be stricken out, the remedy being to sustain an objection and
have the questions reframed.

Appeal from a judgment of the superior court for
King county, Frater, J., entered July 13, 1926, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action on contract. Reversed.

*J. C. Allen (John F. Walthew,* of counsel), for ap-
pellants.

*Walter G. Kienstra,* for respondent.

Tolman, J.—Respondent, as plaintiff, brought this
action to recover damages for the alleged breach of a

[1]Reported in 258 Pac. 314.

contract to support herself and her minor child. A trial was had to a jury, resulting in a verdict in favor of the plaintiff for $1,500. The defendants have appealed from a judgment on the verdict.

Twenty-two errors are assigned and it will be impossible to treat each separately. Having reached the conclusion that a new trial must be had, we will discuss only such matters as are likely to be of importance in leading to a correct result on a re-trial.

[1] The first three errors assigned go to the pleadings, raising the questions of departure and the pleading of a cause of action in favor of the infant child. We see no departure. Both the original and the third amended complaint, on which the case was tried, set forth the same contract, the same breach, and the only real difference is in the kind and amount of damages alleged to have resulted. This does not constitute a departure.

[2] The third amended complaint alleges:

"That on or about the 3rd day of September, 1925, and for a short time prior thereto the defendants entered into a written contract by letter with the plaintiff, whereby the defendants invited, solicited and induced the plaintiff, she being a widow and mother of a minor child about fifteen months old, to relinquish her associations with her relatives and friends in Bristol, England, and to come to this country and live with the defendants, who were sister-in-law and brother-in-law by marriage, of the plaintiff; that they would assist her to secure entry to the United States of America, and that they would pay her fare and expenses to Seattle, Washington, and that, if the plaintiff did come and reside with them, they would support the said child of plaintiff, educate it and practically adopt it and provide for it generally as well as for the plaintiff for the balance of their lives,"—

and

"That the plaintiff has been damaged the sum of $100 for expenses in coming from Bristol, England, to

Seattle, Washington; and the sum of $12,900 (twelve thousand nine hundred) dollars for loss of board and support of herself and child for the period of thirty years."

From this it will be seen that respondent was endeavoring to recover in this action all damages which might accrue to the child from a failure to practically adopt it and to support it for a period of thirty years. On this phase of the case, the court instructed the jury:

"No. 6.

"You are instructed that, if from a preponderance of the evidence and under the instructions of the court, you find the plaintiff is entitled to recover, then in assessing her damages you are at liberty to take into account her situation, as outlined in her complaint, and to award her such sum as will fairly compensate her for such damages as you find she has sustained, not exceeding, however, $13,000.00, the demand of her complaint,"

and gave no instruction limiting the recovery by the plaintiff of damages flowing from the breach of contract as to the child, to its dependent years. It seems to us obvious that a widowed mother is charged by nature and by law with the duty of nurturing, supporting and educating her child only during that period when, by reason of immaturity, it cannot be self-supporting. Nothing is pleaded or shown in evidence indicating that the child was in any way sub-normal, and the presumption is that it will reach the self-supporting stage as and when a normal child of its sex would do so. Therefore the court should have granted the motion to strike from the complaint to the extent indicated, and in instructing the jury should have declared the law accordingly, leaving the child to recover, if it might, for the loss of the benefits, if any, which might be expected to accrue to it under the alleged contract after the age of dependency had passed.

[3]    Upon the trial, respondent testified to the break between herself and the appellants, testified that she was ordered from their home and that she went some two or three miles to the office of a doctor whom she had met before, and there sought refuge. The doctor was then called as a witness on her behalf, and testified to respondent's arrival at his office, her mental and physical condition when she arrived, and then, over objection, was permitted to detail all that respondent then told him as to what had occurred between Mrs. Rodgers and herself causing her to leave appellants' home. It is attempted to justify the admission of this evidence upon the ground that it was a part of the *res gestae*. We cannot so hold. In the time it took to go from the Rodgers home to the doctor's office, there was ample opportunity for respondent to plan how best to appeal to the doctor's sympathy, and her then situation made her absolutely dependent upon the sympathy of someone. The situation was such as to exclude the very basis of the *res gestae* doctrine, and the testimony referred to was hearsay and prejudicial.

[4]. A witness for appellants, a brother of Mrs. Rodgers, testified that he was present at the Rodgers home, read a letter then just received from the respondent in England, and that he read and knew the contents of a letter written and sent by Mrs. Rodgers in reply, which letter, according to respondent's testimony, had been destroyed and its contents were being proved by both sides by parol testimony. After the witness had stated generally the contents of the destroyed letter, counsel for appellants proceeded to direct his attention to some matters not covered by the general answer. To these questions the witness answered in effect that the letter said that to provide the transportation for the respondent would work a hardship upon Mr. and Mrs. Rodgers, but that, in view of

her extreme need, they would let their taxes go unpaid and would provide the necessary money; also that there was nothing said in the letter as to the length of time respondent should live with the appellants, if she came to them. After some colloquy between court and counsel, on motion of the respondent, this testimony was stricken on the ground that the questions which elicited it were leading and suggestive.

We fear that this ruling was too technical. Manifestly, in such a situation, if the general statement of the witness omits mention of any particular feature, his attention may be directed to the matters omitted and the details be thus supplied. The questions, "What, if anything, was said about taxes?" and "What, if anything, was said as to the length of time she was to live with them, if any?", seem to have been asked in good faith and to be no more suggestive than was necessary to direct the attention of the witness to the particular matters upon which information was sought. But if suggestive so far as to offend, the remedy was to sustain an objection and permit the questions to be reframed, not to strike the answers and thus prevent the appellants from meeting the testimony already given by respondent as to the contents of this particular letter.

Appellants submitted certain requested instructions, each of which was refused, and each bears the endorsement over the signature of the trial judge:

"This instruction refused for the reason that same was not submitted in accordance with Rule XII, General Rules of the Superior Court, whose requirements were disregarded."

Considerable argument is indulged in as to whether rule XII referred to was so far disregarded as to justify the act of the trial judge in refusing to consider these instructions and as to whether the rule is direc-

tory or mandatory, and also as to the duty of the court to define to the jury the law applicable, whether requests were made or not. Since there must be a new trial, none of these questions now requires an answer. The court, after defining the issues, gave the general stock instructions only, such as that the burden was upon the plaintiff to prove the allegations of her complaint by a fair preponderance of the evidence, defining what fair preponderance means, that the jury were the sole judges of the credibility of the witnesses, and the like, and, except in instruction 6, hereinbefore quoted, nothing was given to the jury which could be construed to be the law of the case. The quoted instruction, as we have already seen, misstated the law, and therefore it was error to give it.

Upon a careful consideration of all of the evidence, we find that it was sufficient to carry the case to the jury and that the motion for nonsuit was properly denied.

The other assignments raise matters of such minor importance, and so little likely to again occur, that we feel justified in not discussing them.

The judgment is reversed, and the cause remanded with instructions to grant a new trial.

MACKINTOSH, C. J., HOLCOMB, PARKER, and FRENCH, JJ., concur.